party to this Agreement and who are brought into an outside jurisdiction, such Employee shall be entitled to receive the wages and conditions effective in either the home or outside jurisdiction whichever are more favorable to such Employees and fringe benefit contributions on behalf of such Employees shall be made solely to their home funds in accordance with their governing documents. This provision is enforceable by the Local Union or District Council in whose jurisdiction the work is being performed, both though the procedure for settlement of grievances set forth in its applicable Collective Bargaining Agreement and through the courts, and is also enforceable by the Union party to this Agreement, both through the procedure for settlement of grievances set forth in this Agreement, and through the courts.

7.4    Preservation of Work Clause – To protect and preserve for the Employees covered by this Agreement, all work they have performed and all work covered by this Agreement and to prevent any device or subterfuge to avoid the protection and preservation of such work, it is agreed as follows:  If the Employer performs on-site construction work of the type covered by this Agreement under its own name or the name of another, as a corporation, company, partnership or other business entity, including a joint venture, wherein the Employer through its officers, directors, partners, owners or stockholders, exercises directly or indirectly (through family members or otherwise) management, control, or majority ownership, the terms and conditions of this Agreement shall be applicable to all such work.

7.4.1    All charges of violations of Section 7.4 of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement on the handling of grievances and the final and binding resolution of disputes.  As a remedy for violations of this Article, the Industry Board or Arbitrator shall be able at the request of the Union to require an Employer to pay 1) to effected Employees covered by this Agreement including registered applicants for employment the equivalent of wages those Employees have lost because of the violations, and 2) into the affected Joint Trust Funds to which this Agreement requires contributions and any delinquent contributions that resulted from the violations.  The Industry Board or Arbitrator shall be able also to provide any other appropriate remedies whether provided by law or this Agreement.  The Union shall enforce a decision of the Industry Board or Arbitrator under this Section only through arbitral, judicial or governmental (for example, the National Labor Relations Board) channels.

7.4.2    If after, an Employer has violated this Section, the Union and/or the Trustees of one or more Joint Trust Funds to which this Agreement requires contributions institute legal actions to enforce an award by an Arbitrator or the Industry Board remedying such violation, or defend an action that seeks to vacate such award, the Employer shall pay any accountants and/or attorneys fees incurred by the Union and/or the Joint Trust Funds, plus costs of the litigation, that have resulted from such legal action.  This Section does not affect other remedies, whether provided by law or this Article, which may be available to the Union and/or the Joint Trust Funds.  Should the Employer be found not in violation of this Section, costs incurred to defend will be borne by said Trust.

SKILLING EXHIBIT 1 P. 40

## ARTICLE 8
### TRAINING, SAFETY AND CONTINUING EDUCATION

8.1     The Employer agrees that no Employee will be allowed to use any poisonous materials injurious to the health such as wood alcohol, coal tar products, benzol varnish remover, toxic materials and paint with heavy lead content or to perform the sanding of other dangerous materials, unless they are protected by industry standard devices and methods used for health protection.

8.2     Every reasonable device and method shall be adopted to minimize the danger and hazard involved in spray work, and all appropriate regulations of State and Municipal Departments, Commissions and Health Officers, will be observed, including the rules and regulations in the Safety Standards for the Painting and Decorating Industry for the State of Washington.

8.3     The Employer shall abide by all applicable local, state, and federal safety and health standards, laws, and regulations.   Alleged violations of safety standards, laws and regulations are subject to the grievance and arbitration provisions of this Agreement. Nothing in this Agreement shall be construed as modifying the Employer's obligation to provide a safe workplace or as imposing upon the Union a duty to assure a safe workplace. The Union and the Employees shall bring these matters to the Employer's attention.

8.4     Both Union and Employer agree that both the Employer and the Employees will abide by all the safety rules, including first aid/CPR cards and regulations as stated in Section 8.3.

8.5     All Employees dispatched by the Union will have a first aid/CPR card, social security number, proper ID to comply with Form I-9 Employment Eligibility Verification or the equivalent, tools of the trade, all items on the Referral Check-Off Sheet   herein Attachment 2, documentation of applicable training and any training/certification imposed by State or Federal agencies, have all cards covered by this Agreement or signed up for classes considered inherent to the trade such as but not limited to lead awareness or certifications thereof, and proof of applicable medical tests (i.e., pulmonary, blood lead level and annual physical).

## ARTICLE 9
### GRIEVANCE PROCEDURE

9.1     All grievances or disputes between the Union, Employee and the Employer arising during the term of this Agreement shall be settled in accordance with the provisions of this Article.  The terms "grievance" and "dispute" include, but are not limited to, cases of violation, misunderstanding or differences in the interpretation of this Agreement.  There shall be no slowdown or stoppage of work as relates to said grievance.  Both parties pledge their immediate cooperation to eliminate the above-mentioned possibilities or concerns, and the following procedure is outlined for that purpose.

9.2     No claim for back pay, travel time, subsistence, overtime or any pay due and payable each week will be considered if filed later than 14 calendar days.  However, this shall not preclude the right to hear any complaints during the term of this Agreement wherein the evidence indicates a condition of continual violation or to take such remedial action as the situation may demand consistent with the intent and purpose of this Agreement.

SKILLING EXHIBIT 1 P. 41

9.3    The five (5) members from WWSPE and the five (5) members from the Union shall jointly constitute the Industry Board to establish procedural and record keeping guidelines for the Grievance Committees, to appoint committees as may be desired within the industry, to promote the industry and to interpret the intent of the negotiators of this Agreement.   The Industry Board will meet to conduct business on an as needed basis. The Industry Board shall have the authority to interpret and amend this Agreement. Neither the Industry Board nor the Grievance Committee (or any member thereof) shall be subject to any claims for fiduciary liability or any other responsibility, known or unknown, for or of their actions or inactions pursuant to this Agreement.

   9.3.1    An Industry Board meeting may be requested by either the Chairman of the Union Representatives or by the Chairman of the Employer Representatives.

   9.3.2    The Industry Board shall meet no later than fifteen (15) calendar days after receipt of request for a meeting.  However, this time limit may be waived by mutual consent, in writing.

   9.3.3    Any business brought before the Industry Board shall be decided by majority vote of those present.    A quorum shall be a minimum of two (2) representatives from Labor and two (2) representatives from Management.    For voting purposes there must be equal representation from each side.

9.4    In the event a grievance or dispute arises, a representative of the Union shall attempt to settle the grievance or dispute by contacting the Employer involved.   Any grievance must be presented to the Employer in writing within 14 calendar days of the facts giving rise to its occurrence.   Failure to submit in writing by the Union within 14 calendar days or to timely advance said grievance through this procedure will constitute a waiver.   The Employer shall respond in writing within 14 calendar days of such written notice or if no response is provided within such time period the grievance or dispute will be settled in favor of the aggrieved.   In the event the grievance or dispute is not resolved, either the Union or the Employer is authorized to refer the grievance or dispute to the Industry Board provided that such referral must be in writing with copies to all parties, and presented within 14 calendar days.  However, any of the time limits mentioned in this Article may be waived by mutual consent of the Employer and the Union.

9.5    The Grievance Committee shall be two (2) members from WWSPE and two (2) members from the Union, selected by their respective groups from the Industry Board, and a fifth (5th) member at large chosen by mutual agreement of the other four (4) members of the Grievance Committee.   Neither individual party (aggrieved or grievant) involved in a dispute shall be a part of the Grievance Committee and the decision of the Committee shall be final and binding upon all parties.   The full Committee will hear each dispute or grievance and voting will be by secret ballot.   The majority decision of the Committee shall be final and binding.  Either the Employer or the Union is authorized to refer this matter to arbitration within ten (10) calendar days after decision.  Neither party shall have the right to representation without mutual agreement.  Neither party shall have the right to electronically record any proceedings under this section without mutual agreement.

9.6     Matters referred to arbitration will be so submitted by the affected parties to the American Arbitration Association (AAA) for a binding decision.  In such instances, the affected parties to the dispute shall appoint an arbitrator to review the matter and render a binding decision.  Either party to the dispute will request a list of seven (7) names from the AAA and the parties shall alternately strike names from the list.  The remaining name shall be the arbitrator.   If the parties are unable to reach a mutually agreed upon arbitrator, the American Arbitration Association shall make the designation.  The affected parties in the arbitration shall equally share in the cost of such arbitration.

9.7     The arbitrator shall only have jurisdiction and authority to interpret, apply or determine compliance with the provisions and articles of this Agreement.  Any award by the arbitrator will be final and binding.  A copy of the award must be submitted by the arbitrator to the Industry Board as soon as such award is rendered, and in no way greater than 45 calendar days after the hearing.

ARTICLE 10
TRUSTS

10.1     Each Employer signatory to this Agreement is required to make reports to the Trusts (see Article 20) and remit with contributions, if any due, to Western Washington Painters Pension Trust, 201 Queen Anne Avenue N, Suite 100, Seattle, Washington 98109 (hereafter called the central distribution point) or such other place as may be designated. The report and payment must be postmarked by the post office no later than the last day of the month following the month in which hours were worked.  If in the opinion of a CPA, as provided for in 10.4 and 10.5 of this Article, employed by the Union or any of the Trust Funds, the Employer has failed to maintain accurate time records, it shall be conclusively presumed that each Employee who performed any services in a given week worked 40 hours in that week.

    10.1.1   For the purpose of computing trust fund contributions the Employer shall multiply the hourly contributions rate set forth in this Agreement by the hours of work as reflected by the Employee's time cards for the period in question.

10.2     In the event an Employer fails to make any of the contributions or remittances as required by this Agreement, such Employer shall be required to pay, in addition to the principal sum due, reasonable attorney's fees and the costs of collection.  In the event suit is initiated, it is agreed that such suit shall be filed in a court of competent jurisdiction (either State or Federal) located in King County, in the State of Washington.

10.3     By entering into this Agreement, the Employer adopts and agrees to be bound by the terms of the Trust Agreements establishing the Funds referred to in this Article and agrees to be bound by all past and future lawful acts of the Trustees of each such Fund. The Employer shall not be bound by the terms of any Trust Agreement or the actions of the Trustees of any Trust Fund unless the Employer is obligated to make contributions to such Fund pursuant to this Agreement.

10.4     The Trusts or the Union shall have the authority to appoint a CPA who shall have the right to enter upon the Employer's premises at reasonable time, during normal business hours, and inspect and copy business records and conduct other relevant duties to function as ordered by the Trusts or Union.  Such records as required by said agent to perform these duties will be provided by the Employer.

12

10.5     It shall be the duty and right of the Trustees of the Trusts to audit each Employer party to this Agreement at least once during the life of the Agreement.  The net costs of any such audit shall be borne pro rata by the Trusts.  Any new Employer must be audited at or near the end of its first year anniversary.

10.6     If an Employer audit conducted under the authority granted by this Agreement reveals an underpayment of either wages or fringe benefits (Health & Welfare, Pension, Apprenticeship, Labor/Management Trust, etc.) the Employer shall be required to pay pursuant to the Trust document.

10.7     The Trustees of each of the Trusts shall be obligated to accept contributions from any Employer who is party to an agreement with the Union.  The term Employer as used in this Section includes governmental and quasi-governmental entities.

10.8     Employers having working agreements with Unions affiliated with the International Union of Painters and Allied Trades may participate in the Trusts by adopting the Agreement and Declaration of Trusts and conforming to regulations as determined by the Trustees of such Trusts.

10.9     Election and terms of Trustees shall be in accordance with the Agreement and Declaration of the Trusts.

10.10    WESTERN WASHINGTON PAINTERS LABOR MANAGEMENT COOPERATION TRUST. The Employer and the Union agree to the continuation of the Trust, the objectives of which are to establish and operate joint labor management activities designed to improve labor management relations, job security, communications, organizational effectiveness, and other subjects of mutual interest, including study and exploration of new and innovative joint approaches to achieve organizational effectiveness; to eliminate potential economic problems which reduce competitiveness and inhibit the economic development of the industry; to enhance the involvement of workers making decisions that affect their lives; and to expand and improve working relationships between workers and Employers.


ARTICLE 11
EMPLOYMENT OF EMPLOYEES

11.1     Except as specifically limited by this Agreement and (with or without cause except as expressly provided to the contrary in this Agreement), the Employers shall have entire freedom of selectivity in hiring and may discharge any Employee for any cause which they may deem sufficient.

11.2     Painters, Tapers and Apprentices will be hired in the manner set forth in this Article.  Separate hiring halls will be maintained by each Local Union party to this Agreement.  Hiring halls will be operated on an open and non-discriminatory basis for employment of Employees of this particular trade, including Painters and/or Tapers or indentured Apprentices, previously employed by Employers signatory to this Agreement and non-member workers who may make application for a place on the appropriate out of work list.

SKILLING EXHIBIT 1 P. 44

11.3     When an Employer desires to hire Painters, Tapers or Apprentices, a request shall be made to the Local that has jurisdiction over the job.  If the order is not filled within twenty four (24) hours (Saturday, Sunday and holidays excluded) the Employer can hire from any source.  The Employer shall report the name, address and social security number of any Employee hired outside the hiring hall to the Local Union having jurisdiction over the job within forty eight (48) hours after the Employee begins work.

11.3.1   Each Employer agrees that, at the time of employment of any Employee covered by this Agreement, such Employer shall secure from the Employee a "Referral Check Off Sheet" (See Attachment 2) and a work referral slip (dispatch) and the slip shall indicate that an authorization form has been signed by the Employee, and is on file at the Local Union office.  The Employer will be provided with a copy of the authorization form.

11.4     The Union shall maintain a list of available Employees, on an open nondiscriminatory basis.   The Union shall refer applicants for employment, without unlawful discrimination against such employees, by reason of Membership in the Union, race, religion, color, age, sex, national origin, disability or veteran status. Separate out-of-work lists will be maintained for Painters and Painter Apprentices. The Painter lists will be divided into three parts: "A", "B" and "C".  The "A" list shall consist of all applicants for employment who have demonstrated their craft knowledge by having worked a period of two (2) consecutive years for Employers who have established collective bargaining relationships with IUPAT DC#5 and are not considered "Untested" as defined in Article 3.4. The "B" list shall consist of all applicants for employment who can demonstrate their craft knowledge by demonstrating that they were employed as a Painter for three (3) consecutive years and are not considered "Untested" as defined in Article 3.4. The "C" list shall consist of all other applicants seeking employment as a Painter.   Unemployed applicants may register in any Union covered by this Agreement; however, no applicant shall register in more than one Local Union at any time.  Any applicant who registers on the out-of-work lists maintained by any of the Locals party to this Agreement will be removed from such lists and required to re-register if said applicant is registered at more than one Local Union at any time.  All applicants must re-initial their respective list every thirty (30) days.   Failure to do so will be cause for the Local Union to remove such applicant from the list.

11.5     Upon receiving a request for Painters and in the absence of a specific request by name, by the Employer, the Union will first refer from the "A" list in the order in which they are registered, after the "A" list is exhausted then from the "B" list in the order in which they are registered, after the "B" list is exhausted then from the "C" list in the order in which they are registered.  It is agreed that the Employer may request applicants by name.  Such requests will be honored by the Union if said employee has been previously employed by the Employer, and the requests are made in writing and the applicant meets the qualifications to be registered on the "A" or "B" list. Any Painter Apprentice that becomes dropped from the apprenticeship training program by the JATC will be limited to the "C" list.

11.6     Special skills requests will be recognized if "A" or "B" list applicants having such skills are available but the top applicant on that list with the special skills will be taken first.  Request by name for special skills must be confirmed in writing within forty eight (48) hours.

SKILLING EXHIBIT 1 P. 45

11.7    Employees who are working within the geographical area covered by this Agreement for an Employer who is party to this Agreement may be transferred from job to job any place within the area covered by this Agreement without being dispatched to such subsequent jobs. However, all new hires shall be hired through the Local Union in whose jurisdiction the job site is located, if such are available.  If not, the Employer may hire from any source.

11.8    The Union will fill out the "Referral Check-Off Sheet" (See Attachment 2), which is part of the referral slip, when dispatching Employees.

11.9    Employers shall notify the JATC office within five (5) days of any Apprentice or Pre-Apprentice terminated, laid off or who quits.

ARTICLE 12
PAINTER APPRENTICES

12.1    All Apprentices shall be registered with the local Joint Apprenticeship and Training Committee (JATC) and the Washington State Apprenticeship and Training Council (WSATC).

12.2    Each Employer may employ one Apprentice to each three Painters, Decorators, or Wall Coverers or major fraction thereof, unless their right to train Apprentices has been revoked by the local Apprenticeship and Training Committee.  This shall not limit the obligation of the Employer to train Apprentices nor shall it be construed to replace Painters and/or in the shop as outlined in this Agreement or local Apprenticeship and Training Standards, nor shall it be construed to replace Painters in a shop when substantial local unemployment exists in the area of the District Council.

12.3    It shall be the duty and responsibility of the Joint Apprenticeship and Training Committee to provide insofar as possible, steady employment to all Apprentices.

12.4    Employers and members of the Unions agree that all Apprentices working in the trade shall attend school where established for the training of said Apprentices, and assist in the enforcement of all rules and regulations now in effect and hereafter adopted by the local Joint Apprenticeship and Training Committee.

12.5    Subject to Section 12.11, all Apprentices shall pass both written and hands on tests, as administered by the JATC for a specific period of Apprenticeship prior to advancement to the next period of apprenticeship.  Prior to the Employer advancing the Apprentice, the Employer shall have the option to verify that the Apprentice has passed the required testing.

12.6    All Apprentices failing to attend classes where schools are established on nights designated, except by legitimate excuse, shall be immediately removed from their work by an authorized representative of the Joint Apprenticeship and Training Committee and shall not be permitted to return to said work until a hearing has been held before the local Joint Apprenticeship and Training Committee and the matter settled to the satisfaction of said Committee.

12.7    Positively no Apprentice shall be sent to out of town work that will interfere or prohibit them from attending school classes on nights designated for block/nightly training for school attendance.

12.8     No Apprentice shall be allowed to use a spray gun or work on a swing stage until they have completed the related classroom training as prescribed by the local Joint Apprenticeship and Training Committee, providing such training will be within the first year of the program.

12.9     Painter Apprentices sent to jobs shall be accompanied by a Painter until said Apprentice has had one and one-half years experience at the trade.

12.10    An exception to Sections 12.8 may be obtained by the Employer providing the beginning Apprentice is trained in the use of swing stages and spray by the Employer in a two (2) week safety and training course designed by the Joint Apprenticeship and Training Committee.  The Union must be provided with certification that the Apprentice has received such training before operating such equipment.  Such certification must be in writing and signed by both Employer and Employee.

12.11    Upon completion of apprenticeship training, the Painter Progression Test will be given by the Joint Apprenticeship and Training Committee. An apprentice that fails to reach a minimum of P-3 level during their Painters Progression Test required for graduation will remain in the apprenticeship program at the 8th bracket (or 6th bracket if Apprentice was indentured prior to March 1, 2011) for an additional six months.  At the end of this additional six months a second Painters Progression Test will be taken. Similar to their first test, if the apprentice fails to reach the required P-3 Level they will be placed in either the P-1 or P-2 level, according to the results of their test."

## ARTICLE 13
## STEWARDS

13.1     The Business Manager of the District Council, or his/her designee, shall have the authority to appoint all Shop Stewards and Job Stewards.  The Business Manager, or his/her designee, also has the authority to remove a Steward.  The Union shall notify the Employer in writing of the appointment and removal of its Stewards.  Stewards shall be appointed from the present work crew of the Employer.

13.2     Stewards' duties are to check all working cards of foreman, workers and Apprentices and to check dispatches of newly hired workers, and to report the same by use of the Stewards Report to the Business Representative of the District Council in the area the work is being performed.  The Steward, as a working Journeyman, shall be allowed a reasonable amount of time to perform his/her duties that cannot be performed outside of working hours.

13.3     Stewards are not authorized to cause or attempt to cause any stoppage of work, slowdown or the termination of any Employee.

13.4     The Steward shall be the last person to be laid off, provided he/she is qualified and able to do the job available to him/her, except foreman, touch-up and specialty men.

13.5     After checking with the Employer, authorized representatives of District Council 5 shall be allowed to visit shop or shops and/or on jobs of the employer to perform his/her regular duties.  It shall not be the intention of the District Council 5 representative to interfere with or slow down any work operations.

SKILLING EXHIBIT 1 P. 47

ARTICLE 14
HOURS OF WORK AND WORK RULES

14.1    Hours in excess of forty (40) hours per week will be paid at the rate of time and one-half (1½) the Employees regular rate of pay.  All other hours will be paid at the regular rate of pay.

14.1.1    Holidays: The following days shall be recognized as legal holidays, and if worked, will be paid at the rate of time and one-half (1½): New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Friday after Thanksgiving Day and Christmas Day.  If a holiday falls on Saturday, the preceding Friday will also be recognized as the legal holiday and if a holiday falls on Sunday, the following Monday will also be recognized as the legal holiday, and in either case, will be paid at time and one-half (1½) the Employees regular rate of pay.

14.1.2    Martin Luther King Day will be recognized as a day of observance and any Employee can take the day off without recrimination, provided that he/she provide the Employer with 24 hour advance notice.

14.2    On multiple shift projects, those involving two (2) shifts or more at the same site, Employees will be compensated by their applicable wage rate during their thirty (30) minute lunch period on the swing and graveyard shifts only.  This clause does not apply to pre-finish shops.

14.3    Painters shall report to work with the usual tools of the trade, consisting of a duster, putty knives, broad knives, a hammer and nail set, 6", 8", 10" adjustable wrenches and an assortment of sizes and shapes of screwdrivers, razor blades holder, roller spinner, assorted pliers and grip.  As a tool of the trade, all Employees shall be required to furnish and wear work boots, clean white overalls/pants and shirts commensurate with the work being done.  No tennis shoes shall be worn on the job.  Protective body coverings will be supplied by the Employer when using hazardous material.  Employees shall not supply paint brushes.

14.4    Wall Coverers will supply straight edge and the usual Wall Coverer's hand tools, with the contractors supplying all the other tools and equipment.

14.5    Personal hand tools furnished by the Taper shall consist of hock and trowel, broad knives 1", 2", 4", 6", 8", 10", 12", hand mixer, mud pan, scrub brush pole, sander, snips, two (2) buckets, utility knife, file, Philips screwdriver, tape reel, hammer, hand sander and whites.  The Employer shall furnish all tools with movable parts, all power tools and stilts.

14.6    Employees are prohibited from reporting to job or shop more than 30 minutes before working time.

14.7    It shall be understood that the preparation of materials and equipment or the cleaning up and removal of same is to be performed by Employees of the Employer within working hours. All spray Painters shall have sufficient clean-up time.  Employees shall be allowed five minutes before lunch and at the end of a shift for personal clean-up.

14.8    Employees who report at the time they are instructed by Employers or their agent, and who are not put to work shall be paid two (2) hours pay, except where Employees are not put to work because of inclement weather, in violation of the Employers Drug and Alcohol Policy or other conditions beyond the Employer's control. All Employees, when ordered to work, must be guaranteed a minimum of two (2) hours pay.  However, if the job site is located outside the free travel zone (reference Section 16.4) all Employees shall receive four (4) hours of show-up pay.

14.9    No contractor shall be dispatched as an Employee until surrendering their credentials and bond.

14.10   If any Employee shall knowingly work for an Employer who does not pay fringe benefits, the Union shall take disciplinary action against the Employee.

14.11   All Employees shall be entitled to meal and rest periods as defined by the Washington State Administrative Codes (WAC).


ARTICLE 15
UNUSUAL CONDITIONS

15.1   WAGES AND FRINGE BENEFITS ON PUBLIC WORKS CONTRACTS

15.1.1    The rate of pay for all classifications of work performed will be that which is predetermined by the appropriate government agency at the time the job was awarded by the contracting agency.   Once the contract is awarded, the predetermined rate will prevail for the duration of the contract.

15.1.2    Fringe benefit payments for Employees shall be paid in accordance with the provisions set forth herein.

15.1.3    Employers found in violation of this provision of the Agreement, by either using the Davis Bacon Wage Rate or re-paint wage rate on any job and/or project other than Davis Bacon or re-paint job and/or project, or by failing to report the job and/or project to the Union, shall be cause for the Union to file a grievance against the Employer with the Industry Board as provided for under this Agreement.

15.1.4    If found in violation, the Employer shall no longer be allowed to use this provision of the Agreement for the duration of the Agreement; and further, the Employer shall pay the current Journeyman's wage rate under this Agreement for any existing jobs he may be doing at the time of the violation of this section.

SKILLING EXHIBIT 1 P. 49

## ARTICLE 16
## SUBSISTENCE PAY AND TRAVEL TIME

16.1     During the lifetime of this Agreement signatory contractors will be allowed to designate the nearest town as the base of their operations and they will state in writing to the Union whether their shop, the Union Hiring Hall, or the county courthouse will be used as starting point for the purpose of travel pay during the lifetime of this Agreement. If contractors do not designate in writing to the District Council of the Local Union that their shop, the courthouse, or the Union Hall shall be used as a starting point for the purpose of computing travel time, the Employer's shop shall be considered the starting point and shall not be changed for the life of this Agreement.

16.2     In the event the Employee lives closer to the job site than the Employer's shop is located, the Employee's home shall be used as the starting point for the purpose of travel pay.

16.3     All toll bridges, ferry fares, or other forms of transportation expenses shall be paid by the Employer in addition to the regular transportation expense covered by Sections 16.4, 16.5 and 16.6 of this Article.

16.4     Travel is as follows:  From Employer's designated starting point to 75 road miles is Employer's free travel zone.  From the Employee's residence to 75 road miles is the Employee's free travel in those instances where the Employee's residence is located closer to the job site that the Employer's designated starting point.  To determine road miles in this Article the Employer will use Mapquest.com or the equivalent. Travel reimbursement for travel from 76 miles to 100 miles is $15.00.

16.5     For travel 101 miles and over, subsistence of $35.00 per day or actual expenses, whichever is greater, paid seven days a week plus one round trip of actual travel hours up to eight (8) hours per day at the straight time rate.  The round trip rate shall repeat itself each time the Employee is required to return to his starting point by the Employer. Subsistence shall mean the cost of lodging plus the cost of meals.

16.6     If an Employee is required to fly or take a train to a job site, all fares and expenses will be paid by the Employer.

16.7     The Employers signatory to an agreement with a District Council, Local Union or the International Union of Painters and Allied Trades in another area and coming into or under the jurisdiction of the Western Washington Area Agreement for the Professional Painting Industry shall use the Local Union dispatch point for purpose of travel pay.  Job sites shall not be considered an Employer's shop or place of business.

ARTICLE 17
WAGES AND CLASSIFICATIONS

17.1     All wages, travel and subsistence pay shall be due and payable by negotiable check payable on demand at par, by lawful currency in an envelope or by direct deposit. In either case a receipt (check stub) showing the Employee's and the Employer's names and addresses, rate of pay, dates and hours worked, both regular and overtime, travel and subsistence pay, and all deductions made and amount due. No more than seven calendar days pay shall be held back.   The said payments shall conform with all provisions pertaining to the payment of Employees as required in this Agreement and Federal and State laws.   Violation of this clause shall be deemed sufficient reason for removal of Employees by a Local Union and/or District Council representative, and said removed Employees shall be paid waiting time as per Section 17.6 of this article.

17.2     In the case of an out-of-town contractor, a reasonable time or arrangement must be allowed to secure the Employee's pay, but in such cases the waiting period shall not start until the beginning of the 2nd shift, in which the discharge or layoff occurred except Saturday, Sunday and holidays.   Employees must report to the Local Union not later than 12:00 noon the following day after such wages are due and payable.   Established pay day shall be recorded with the Union by all signatory members to this Agreement.   Requests for additional time, or variations to this section, must be filed with the Local Union or the District Council prior to any change in the regular pay period.

17.3     Employees feeling they have a grievance pertaining to any compensation for wages, travel time or board and room shall file such claim with their Employers.

17.4     It is agreed by the Union that the wages and conditions described in this Agreement are the minimum wages and conditions for dispatching of Employees and no Employee shall be permitted to work for any Employer signatory to this Agreement for wages or under conditions below the minimum described herein, except as set forth in Article 1, Section 1.5, Article 15 and Article 22, Section 22.5. It shall not be a violation of this Agreement for the Employer to pay wages in excess of the minimums contained herein.

17.5     Monies earned shall be due and payable once a week on the job, at the Employer's point of dispatch, by mail or by direct deposit to the Employee's account at quitting time, except where additional time is requested and found to be to the mutual advantage of all parties concerned.

17.6     Employees laid off for lack of work, discharged or those who quit must be paid in full by the next regular pay period.   These Employees may receive their pay at the Employer's place of business, by direct deposit or by mail.   Failure to do so, or failure to pay an Employee on the regular pay day, or payment of an Employee by NSF or otherwise non-negotiable check, shall constitute a separate and willful violation of this Agreement. If an Employee incurs NSF charges because of having received a NSF check from their Employer, the Employer will be liable for all NSF charges from the Employees bank.   In such instances the Union may, at its discretion, assess damages against such Employer to the extent of time and one-half (1½) of the Employee's regular rate of pay for all "waiting time" including Saturdays, Sundays, or holidays, not to exceed five (5) days pay at time and one-half (1½) or to take any remedial steps as outlined in the Agreement.   Waiting time shall be construed, for the purpose of this Section, as not more than eight (8) hours in any 24 hour period during which an Employee has not received pay.

20                                    SKILLING EXHIBIT 1 P. 51

17.7    The refunding of wage (commonly referred to as kickbacks) to Employers or the acceptance of said refund (or kickbacks) by an Employer shall constitute a distinct and separate violation of this Agreement.    This section shall be in addition to any right accruing under State and Federal Law which makes "kickbacks" punishable by fine and imprisonment.

17.8    SCHEDULE "A" – PROFESSIONAL PAINTERS

HOURLY RATES FOR CLASSIFICATIONS UNDER THIS CONTRACT

EFFECTIVE July 1, 2011

| PERCENTAGE | Untested 60% | Painter 1 70% | Painter 2 80% | Painter 3 90% | Journeyman 100% |
|---|---|---|---|---|---|
| Wage Rate | $ 16.44 | $ 19.18 | $ 21.92 | $ 24.66 | $ 27.40 |
| Health & Welfare | 5.16 | 5.16 | 5.16 | 5.16 | 5.16 |
| H&W Tax Def. Ded. | (0.81) | (0.81) | (0.81) | (0.81) | (0.81) |
| LMCI | 0.06 | 0.06 | 0.06 | 0.06 | 0.06 |
| Training Fund | 0.46 | 0.46 | 0.46 | 0.46 | 0.46 |
| Painter Progression | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| IUPAT Pension | 1.20 | 1.20 | 1.20 | 1.20 | 1.20 |
| WW Pension | 1.37 | 1.37 | 1.37 | 1.37 | 1.37 |
| WWSPE | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| Total Package | $ 23.98 | $ 26.72 | $ 29.46 | $ 32.20 | $ 34.94 |

APPRENTICE WAGE SCALE

| Bracket | 1st | 2nd | 3rd | 4th | 5th | 6th | 7th | 8th |
|---|---|---|---|---|---|---|---|---|
| Percent | 60% | 63% | 66% | 69% | 72% | 75% | 78% | 81% |
| Wage Rate | $16.44 | $17.26 | $18.08 | $18.91 | $19.73 | $20.55 | $21.37 | $22.19 |

The following fringes are to be added to all Apprentice wages:

| | | |
|---|---|---|
| Health & Welfare | | 5.16 |
| H&W Tax Deferred Deduction | | (0.81) |
| Labor/Management Fund | | 0.06 |
| Training Fund | | 0.46 |
| Painter Progression | | 0.05 |
| IUPAT Pension | | 1.20 |
| WW Pension | (starting at 4th bracket) | 5% of Gross Wages |
| WWSPE | | .05 |

| Pre-Apprentice Wage | | Utility Worker | |
|---|---|---|---|
| Wage Rate | $15.00 | Wage Rate | $13.00 |
| Fringe Benefits | None | Fringe Benefits | None |

21

17.8.1    SCHEDULE "B" – TAPERS.  Drywall Finishers (Tapers) will have parity to wages and benefits as in the Western Washington Area Agreement for the Drywall Industry except as stated in Article 2, Section 2.5.

17.8.2    IUPAT PENSION FUNDING IMPROVEMENT PLAN:  The forty-two ($0.42) per hour increase beginning January 1, 2012 to the IUPAT Pension required under the IUPAT Pension funding improvement plan will be an employee deduction.  In the event that any future increases are needed under the improvement plan during the term of this Agreement such increases will be employee deductions.   This deduction shall cease whenever the current required funding improvement plan is no longer required by the IUPAT Pension Trust and/or whenever this extra contribution is no longer required under applicable law.  No additional benefit increase to the IUPAT Pension is provided for during the term of this Agreement.

17.9    Dues Check-off.  Dues Check-off will be as listed in Article 17.8 of gross wage for all Employees regardless of classification.

17.10    Foreman Pay.  Foreman will receive one dollar fifty cents ($1.50) per hour above his/her hourly wage.

17.11    Industrial Premium.  A premium of fifty cents ($0.50) per hour will be paid to the Applicator per Article 3.10.

17.12    Pay Increases.

17.12.1    There shall be a wage freeze in 2010 and 2011.  A seventy cent ($0.70) per hour pay increase for Journeyman wages will occur on March 1, 2012.  A seventy-five cent ($0.75) per hour pay increase for Journeyman wages will occur on March 1, 2013.  A one dollar ($1.00) per hour pay increase for Journeyman wages will occur on March 1, 2014.

17.12.2    In the event that the employee's current rate of pay already exceeds the highest listed Journeyman pay rate, any increase will be at the Employers discretion.  The employee shall see no decrease in his/her current pay rate.

17.12.3    In the event that the Painters Health and Welfare Trust requires an increase in the contribution rate for any contract year, the increase will be deducted from the Employees net pay under the IRS Section 125 Plan.  After proper notification by the Union, each Employer will make the pre-tax deduction for each Employee.   If multiple years require an increase in the contribution rate, the amount will be cumulative and all existing and new Employees will receive the same deduction.  Starting in 2010, the Employer will contribute up to twenty-five cent ($0.25) for any Health and Welfare increase greater than fifty cents ($0.50) in a given year.  Should a portion of the twenty-five cent ($0.25) maintenance rate not be used, no carry over shall occur.

17.13    ONGOING TRAINING.  All Journeymen and Painters must remain current during the life of the Agreement with the following training requirements:   First Aid/CPR, Scaffold and Aerial Lift, Lead Awareness, Confined Spaces, Health and Safety and Haz-Cert Training, or any training mandated by any regulatory agency.

22                    SKILLING EXHIBIT 1 P. 53

17.14    Painters will have the opportunity to progress in their wages by taking the Painter Progression Test that include written and skills applications.   These tests will be administered through the Joint Apprenticeship and Training Committee.   The skills tests will be judged by qualified representatives from both Labor and Management.   A Painter can advance from Painter 1 to Journeyman by testing every 1,200 working hours or once per year at their option, however precedent to such advancements, hours will be verified by trust fund contributions and the required safety training pursuant to Section 17.13 must be current. Any Painter who has graduated, and such graduation can be confirmed, from a State Certified Painter Apprenticeship Program prior to and including 1985 shall be considered a Journeyman Painter.  Prior Agreements had categories of P1 – P4.  As of March 1, 2011 the parties have agreed to abolish the P4 category leaving only P1 - P3.  It is recognized that tested P4's are already present in the system and anticipated to progress to Journey level.   Until all such current tested P4's have progressed to Journey level that category will remain in effect and the wage rate established will not change until progressed forward in accordance with the Agreement.


ARTICLE 18
PAINTER APPRENTICE SCALE

18.1    The Apprentice wage scale shall be based on the current Journeyman scale.

18.1.1    Apprentice Brackets for those indentured prior to March 1, 2011 for purposes of calculating wages shall be:

| | | |
|---|---|---|
| 1st Bracket -  60% | | 4th Bracket -  69% |
| 2nd Bracket -  63% | | 5th Bracket -  72% |
| 3rd Bracket -  66% | | 6th Bracket -  75% |

18.1.2    Apprentice Brackets for those indentured after March 1, 2011 and corresponding percentages for purposes of calculating wages shall be:

| | | |
|---|---|---|
| 1st Bracket -  60% | | 5th Bracket -  72% |
| 2nd Bracket -  63% | | 6th Bracket -  75% |
| 3rd Bracket -  66% | | 7th Bracket -  78% |
| 4th Bracket -  69% | | 8th Bracket -  80% |

18.2    Each period (Bracket) of Apprenticeship is at least six months duration during which time the Apprentice must have worked a minimum of 750 hours on the job and   satisfactorily   completed   the   related   school   training   and   testing. Advancements to the next Apprenticeship period are made at the discretion of the local Joint Apprenticeship and Training Committee and the Employer, providing all of the applicable Apprenticeship standards have been met.

18.3    Apprentices shall receive Health & Welfare coverage.   Payments of Western Washington Pension coverage on behalf of Apprentices shall commence upon advancement to the 4th Bracket.   Payments into the IUPAT pension will commence upon employment.

23                          SKILLING EXHIBIT 1 P. 54

18.4    A graduate of the JATC shall not suffer a reduction in wages by his/her current Employer after completing the program.

18.5    A graduate of the JATC will receive the wage rate at the level tested per Article 12, Section 12.11.


## ARTICLE 19
## PRE-APPRENTICES

19.1    Pre-Apprentices may be hired at any time of the year.  However, they shall not be used to displace Journeymen or Apprentices.

19.2    The Employer must notify IUPAT District Council #5 within 48 hours of hiring any Pre-Apprentice.

19.3    No Employee shall be a Pre-Apprentice for more than 1 year.  (See Article 11.9)

19.4    It is recommended that no Pre-Apprentice shall become an Apprentice unless he or she has worked at least 30 days as a Pre-Apprentice.

19.5    Pre-Apprentices must attend an orientation class from the JATC within their first 30 days of employment.  The Employer will pay four hours of this orientation at the Pre-Apprentice wage to the attendee on the first pay period following confirmation from the JATC of such attendance.

19.6    Pre-Apprentices need not be members of the Union.  Dues Check-off listed under Article 17.8 of gross wages shall apply.


## ARTICLE 20
## TRUST FUNDS AND BENEFITS

20.1    All Employers are expected to remit trust fund payments promptly, as set forth in the applicable trust agreements.  In the event an Employer does not file a trust fund remittance report on a timely basis, or files a remittance report without enclosing full payment, the trust fund administrator shall contact such Employers immediately to demand payment, and shall also advise the Union.

   20.1.1    If, after an audit conducted by the trust funds, an Employer is found to owe money to the Trust; the Employer shall pay the deficiency promptly.  If the Employer intends to contest the audit, he shall so notify (within 30 days) the trust fund administrator and they shall establish an escrow account, within 30 days of notice of the audit results, into which the Employer shall deposit the contested amount pending resolution of the dispute.

20.1.2    It is understood and agreed that notwithstanding the provisions of Article 4.3, the Union shall remove employees from and take other economic action against any Employer which has failed to comply with Article 20.1 by making restitution within 24 hours after receiving notice or who has failed to either pay or deposit monies in a trust within five (5) days after an Employer is found to owe money to the Trust after an audit.  Any employees removed from a job by the Union shall not be subject to discipline by the Employer, and, in addition, the employees so removed shall be entitled to receive their regular average weekly wage, including overtime and fringes, for the period of time lost from work.  The enforcement of the foregoing wage payment provision by the Union shall be subject to the grievance and arbitration provisions of this Agreement on an expedited basis.

20.2    Each signatory Employer shall continue to provide Health & Welfare coverage through The Employee Painters Trust and shall make contributions to that Trust at the bargained rate per the Schedule "A" per compensable hour.

20.2.1    In the event that any State or Federal legislation has any impact on participation in The Employee Painters Trust, both sides agree that the Agreement shall be opened for the sole purpose of addressing the issue of Health & Welfare.

20.3    The Employer shall pay into the Western Washington Painters and Allied Trades Apprenticeship and Training Trust forty-five cents ($0.45) per compensable hour for all Journeymen, Painters P1–P4, Untested, and Apprentices on a monthly basis.  Increased to forty-six cents ($0.46) per hour on March 1, 2011, of which one cent ($0.01) is to be forwarded to FTI; increased to forty-seven cents ($0.47) per hour March 1, 2012, of which two cents ($0.02) is to be forwarded to FTI.  The Employer shall pay into the Western Washington Painters and Allied Trades Apprenticeship and Training Trust an additional five cents ($0.05) per compensable hour for all Journeymen, Painters P1–P4, Untested, and Apprentices on a monthly basis to be allocated solely to the Painter Progression Program.

20.4    The Employer shall continue to pay into the Western Washington Pension Plan $1.37 per compensable hour for Journeymen, Painters P1 – P4 and Untested.  Increased to $1.50 per compensable hour on March 1, 2012, $1.60 per compensable hour on March 1, 2013, and $1.70 per compensable hour on March 1, 2014.  Employer contributions for Apprentices shall be, starting with the 4th Bracket, at the rate of 5% of gross wages (exclusive of fringes).  The Employer will also make payments into the IUPAT Pension as described in Section 20.6.

20.4.1   The Union shall have complete discretion to apply any portion of a wage increase towards the Western Washington Pension Plan in addition to the Employer contribution defined in Articles 17.8 and 20.4.  Any increase will be done as a wage deduction.

20.5    The Employer shall pay into the LMCI Trust Fund at the rate of five cents ($0.05) per compensable hour for all Journeymen, Painters P1–P4, Untested and Apprentices.  Increased to six cents ($0.06) per compensable hour on March 1, 2011; increased to seven cents ($0.07) per compensable hour on March 1, 2012; increased to eight cents ($0.08) per compensable hour on March 1, 2013; increased to nine cents ($0.09) per compensable hour on March 1, 2014.

25                                SKILLING EXHIBIT 1 P. 56

20.6     IUPAT PENSION

20.6.1     The Employer agrees to make payments to the IUPAT Union Industry Pension Fund for each Employee covered by this Agreement, as follows:

(a)   For each hour or portion thereof for which an Employee, except as stated in Article 17.8 and 17.8.2, receives pay, the Employer shall make a contribution of $1.20 per hour to be allocated to the IUPAT Union and Industry Pension Plan.

(b)   For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the Employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

(c)   Contributions shall be paid on behalf of any Employee starting with the Employee's first day of employment in a job classification covered by this Agreement.  However, no contributions shall be made on behalf of Utility Workers or Pre-Apprentices.

(d)   The payments to the Pension Fund required above shall be made to the IUPAT Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967.  The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

20.6.2     The Employer hereby irrevocably designates as its representative on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

20.6.3     All contributions shall be made at such time and in such manner as the Trustees require and the Trustees may at any time conduct an audit in accordance with Article V, Section 6 of said Agreement and Declaration of Trust.

20.6.4     If an Employer fails to make contributions to the Pension Fund within 20 days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provisions hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due, together with attorney fees and such penalties as may be assessed by the Trustees.  The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedures or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

20.6.5     The pension plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Codes so as to enable the Employer at all times to treat contributions to the IUPAT Union and Industry Pension Fund as a deduction for income tax purposes.

20.6.6    IUPAT PENSION FUNDING IMPROVEMENT PLAN:  Notwithstanding the foregoing, no additional benefit increase is provided under this Agreement for the IUPAT Pension.  See Sub-Section 17.8.2.  All contributions for funding improvement shall cease when no longer required under applicable law or if any funding improvement contribution is allocated by the IUPAT Pension Trustees to increase benefits.

20.7    All Employers signatory to the Western Washington Area Agreement for the Painting Industry agree to administrative dues, commonly known as dues check-off adopted by the Western Washington Area Local Unions.  The Employer further agrees that on or before the last day of each month, on uniform reporting forms furnished by the distribution agency, to remit the working dues established by the Union per compensable hour (plus any and all dues, withholdings or assessments approved by the Union as a wage deduction) on all Employees to the central distribution point, the Western Washington Painters Pension Trust, c/o Zenith Administrators, 201 Queen Anne Avenue N., Suite 100, Seattle, Washington 98109.  The obligation to the Employer shall apply only as to Employees who have voluntarily signed a valid dues deduction authorization card to be furnished by the District Council #5.   On or before the 15th of each month, the Employer will submit a dues deduction authorization card, together with the number of hours worked by each such Employee during the month previous.

SAMPLE AUTHORIZATION CARD

I hereby authorize and direct my present employer and any other employer by whom I may be employed (if such employer has a labor agreement with I.U.P.A.T. District Council #5) to deduct the working dues established by the Union per compensable hour (plus any and all dues, withholdings or assessments approved by the Union as a wage deduction), from my wages and promptly transmit such monies to I.U.P.A.T. District Council #5. This authorization shall be in effect for the term of the current labor agreement or for one year, whichever is the earliest and shall automatically renew itself for successive one year periods, unless rescinded by written notice given to I.U.P.A.T. District Council #5 within the 60 day period preceding the automatic renewal of the authorization.

In case more authorization cards are needed, call (206) 441-5554.


_____           _____
Date                                               Signature


20.8    The Employer shall pay five cents ($0.05) per compensable hour worked by each Employee to the WWSPE Fund, except for Pre-Apprentices and Utility Workers.

20.9    Employers will collect and submit to the Union dues check-off plus any and all dues, fees, withholdings or assessments approved by the Union as a wage deduction.

## ARTICLE 21
## PERSONAL REAL ESTATE PROVISION

21.1   Real estate owned by the individual signing this Agreement shall be excluded from the scope of the Agreement.   The Employer will maintain a record of all such work performed and all benefits on hours worked.


## ARTICLE 22
## STUDY COMMITTEE

22.1   A study committee shall be appointed if there is an industry agreement, the members of which shall be two members from the Industry, two Union officials, and four bargaining unit members from representative Employers.

22.2   The purpose of the committee shall be to study and advise management and labor of suggested contract or practice changes, to suggest better training or promotion of Union painting business, and to promote labor/management cooperation.

22.3   The committee shall meet every six months.  The committee shall review reports of hours worked, economic conditions, any increase or decrease in membership, job opportunities, and other available information about the painting industry.


## ARTICLE 23
## SAVING CLAUSE

23.1   Should any part of or any provision herein contained be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by any decision of an agency or a court of competent jurisdiction, such invalidation shall not invalidate the remaining portions thereof; provided, however, upon such invalidation the parties signatory hereto agree to immediately meet to re-negotiate such parts of provisions affected.  If such negotiations do not result in an agreed substitute clause, the matter shall be referred to the impartial umpire for final decision which shall be binding upon all parties to this Agreement.  The remaining parts or provisions shall remain in full force and effect.

23.2   This Agreement is not intended to and shall not be construed to permit acts which violate any Federal or State law.  This Agreement is not intended to, nor shall it be construed as creating, recognizing or imposing, on the Union or the Employer any common law duties.

23.3   This Agreement may be executed in multiple counterparts, all such counterparts shall constitute, when taken together, one and the same instrument as if all signatories were contained in the original.

SKILLING EXHIBIT 1 P. 59

ARTICLE 24
DURATION OF AGREEMENT

24.1    This Agreement shall remain in full force and effect until February 28, 2015 and shall automatically renew itself from year to year thereafter unless the Employer or the Union gives written notice of intention to modify the terms of this Agreement or to terminate this Agreement at least 60 days, but not more than 90 days prior to February 28, 2015, or as the case may be, of a subsequent anniversary date. Either the Union or the Employer, if such party has given notice of intent to modify this Agreement, may terminate this Agreement by written notice any time after February 28, 2015. Unless notice is received within the 60 to 90 day time period provided herein, such notice shall be wholly ineffective.

The Union and the Employer agree to strictly adhere to and comply with all the terms of this Agreement including any attachments or Memorandums of Understanding for the betterment of the Painting Industry.

Signed in Good Faith this _____ day of _____ , 20 _____ .

EMPLOYER:                                      I.U.P.A.T. DISTRICT COUNCIL #5:


_____              _____
Employer Signature                            Union Signature


_____              _____
Employer Name (please print)                  Printed Name


_____
Company Name


_____
Address


_____
City, State, Zip Code


_____
Telephone Number


_____
Fax Number


_____
Contractors Registration Number

opeiu#8/afl-cio

SKILLING EXHIBIT 1 P. 60